## SMITH *v.* SMITH.

1. The court erred in failing to instruct the jury as pointed out in the 1st division of the opinion, and in giving the charge set out therein.
2. Under the evidence in this case, the question as to whether or not, at the time the suit for divorce was instituted against the plaintiff in error, he was a resident of Fulton county, was one for determination by the jury.

APRIL 14, 1911.

Divorce. Before Judge Bell. Fulton superior court. February 16, 1910.

*Mark Bolding,* for plaintiff in error. *Alonzo Field,* contra.

HOLDEN, J. The plaintiff in error was sued for a divorce and alimony, temporary and permanent. The petition was brought in the superior court of Fulton county, and alleged the defendant (plaintiff in error here) to be a resident of that county. At the second trial, for final divorce and permanent alimony, the court allowed a plea of the defendant, striking the paragraph in his original answer wherein he had admitted himself to be a resident of Fulton county, and setting up that at the time the original petition was filed he did not reside in that county, and therefore that the trial court had no jurisdiction of the suit. The trial resulted in a verdict in favor of the wife for divorce and permanent alimony; the defendant moved for a new trial, which was denied, and he excepted. All the special assignments of error are based on the contention of the defendant that his legal residence was not in Fulton county. The evidence on the question of the defendant's residence was in substance as follows. The plaintiff testified: "We separated Sept. 8, 1907. At the time of the separation we were living at West End in the city of Atlanta, in Fulton county, Georgia. Since Sept. 8th, 1907, we have been living apart and in a state of separation. . . On Nov. 28th, 1907, I saw J. Horace Smith [the defendant] in West End, where we had lived. Some of the property was there intact. I also called up Mr. Smith in West End, and he answered the 'phone. I called up a residence on the opposite side of the street over the 'phone, and Mr. Smith answered. . . Mr. Smith's father lived at Clarkston in DeKalb county. I am certain of the date of the separation. At that time we were living in West End. From the time of the separation till the trial of the temporary alimony matter here, I saw Mr. Smith

in passing. He stayed at his father's, and passed my door twice a day. I don't know whether I saw him every day during that time; probably some days I happened to be where I could not see him. I would see him pass my house every day. He was working in Atlanta. After the separation he went to his father's and stayed there at night. He was down there at the time this suit was filed, and he was there at the time of the hearing of the temporary alimony." J. L. Smith testified: "I am the father of the defendant in this case, J. Horace Smith, and live in DeKalb county, Clarkston, Georgia. I have been living there seven years. I remember the time the suit was filed for divorce and alimony by Mittie L. Smith against J. Horace Smith. At that time my son was staying at my house in Clarkston, DeKalb county, Georgia. He went back and forward every day to his work. He stayed at my house. He had a contract with me for board during that time. When this suit was filed he had been staying at my house for about a month. Prior to that time he and his wife resided in Atlanta. They lived in West End a month or such a matter. . . Prior to that time they lived in Decatur. Prior to that time they lived at Edgewood and also Kirkwood in DeKalb county. The time I have mentioned as my son's having lived in West End is the only time my son ever stayed or lived in Fulton county. All the rest of the time he lived in DeKalb county. The separation was about the first of September. After the separation Mr. Smith's household furniture and goods was most of it in DeKalb county, at a friend of his house, a man named Floyd, just across the line in DeKalb county. Some of the other part of his property was stored somewhere, I don't know where. Probably some of it was where they lived in West End. . . When my son was living at my house, his wife and family was living right there at Clarkston; she was staying with her father. She was living there at the time my son came to stay with me. My son and his wife were living at West End when they separated. After the separation his wife lived at Clarkston. I think a month is about all the time they lived at West End." The witness further testified that his son came to his house the first of September, and stayed 2 or 3 months. The witness was present at the hearing for temporary alimony after the 8th of October. His son "did not leave the State right straight;" he worked at Rhodes-Haverty the whole month of October, and worked there in November, 1907,

and until he left Atlanta. Another witness testified, that he lived in DeKalb county; that from about the first of September until the latter part of October he saw the defendant passing his house; that he saw him about every morning going to the train, and saw him in the afternoon coming back, until it got dark. On cross-examination he testified: "I am not positive of the particular month in 1907. It was along in September, October, or November. . . The last time I saw him was in November, as he went past." Another witness testified that he lived in Clarkston and saw the defendant while he was staying there with his father, going backward and forward to town to work. This was in September, as well as the witness could recollect. He saw him after September about the first of October. "It was in the latter part of October and November. I can't indicate the particular time in September. . . I don't remember whether it was the first or the last." The plaintiff, recalled, testified that she and the defendant moved to West End February 22, 1907, and were living there on the date of the separation. The suit was filed September 25th, 1907.

1. Error is assigned on the failure of the court to charge the provisions of section 2181 of the Civil Code (1910), and especially on the failure of the court to charge the second and last sentence thereof. The provisions of that section are as follows: "The domicile of every person of full age, and laboring under no disability, is the place where the family of such person shall permanently reside, if in this State. If he has no family, or they do not reside in this State, then the place where such person shall generally lodge shall be considered his domicile." There was evidence to the effect that the plaintiff and the defendant separated as husband and wife on the 8th day of September, 1907, while residing in Fulton county, and that after the separation the defendant continued to work in Atlanta, but boarded with his father in DeKalb county until several weeks after the suit for divorce was filed on September 25th, 1907. After the defendant separated from his wife, with whom the children of the marriage remained, his place of residence would have to be determined as if he were "a person having no family." *Gilmer* v. *Gilmer*, 32 *Ga.* 685. We think, therefore, the last sentence in the code section above quoted, that "If he has no family, . . . then the place where such person shall generally lodge shall be considered his domicile," should have been given in charge to

the jury. The court nowhere gave this principle in charge, and we think it was error for the court to fail to charge the jury as above stated.

Error is assigned on the following charge of the court: "The court further instructs you that if a person shall reside indifferently at two or more places in this State, such person shall have the privilege of electing which shall be his domicile; and if such election shall be made notorious, the place of his choice shall be his domicile. If no such election be made, or if made is not generally known among those with whom he transacts business in this State, third persons may treat each one of such places as his domicile, and it shall be so held; and in all such cases a person who habitually resides a portion of the year in one county, and another portion in another, shall be deemed a resident of both, so far as to subject him to suits in either for contracts made or torts committed in such county. Transient persons whose business or pleasure causes a frequent change of residence, and having no family permanently residing at one place in this State, shall be deemed and held, as to third persons, to be domiciled at such place as they at the time temporarily occupy." Complaint is made that this charge was not applicable to any phase of the case under the evidence introduced. We think it was error to give this charge, as no portion of it was applicable. After the separation on September 8th, 1907, while the husband continued to work in Atlanta, he boarded with his father in DeKalb county, and was boarding there at the time the suit was filed on September 25th, 1907. There was evidence that he came to Atlanta to work during the day and returned to his father's every night, and that that was the place where he generally lodged. The place of his residence after the separation, as above stated, is to be determined as if he were "a person having no family," and there is no evidence that he resided "indifferently at two or more places in this State." Nor is there any evidence that "he habitually resided a portion of the year in one county and another portion in another" county. Nor is there any evidence bringing him within that class of persons described as "transient persons whose business or pleasure causes a frequent change of residence," and have no family residing permanently in this State. See, in this connection, *Knight* v. *Bond*, 112 *Ga.* 828 (32 S. E. 206). The above-quoted charge was inapplicable, and constituted

error requiring a new trial, inasmuch as one of the main defenses set up by the defendant to the suit was that the court had no jurisdiction to entertain the suit for divorce, because the defendant at the time of its institution was not a resident of Fulton county. There was no error in the other charge complained of.

2. Plaintiff in error excepted to a remark made by the court at the conclusion of the plaintiff's evidence, when the defendant made a motion for a nonsuit. This ground of the motion is not referred to in the brief of counsel for the plaintiff in error, and will be considered as abandoned. The court committed no error in refusing to nonsuit the case, nor in refusing to direct a verdict in favor of the defendant. The question of the place of residence of a party is a mixed question of law and fact. There was evidence to show that when the plaintiff in error and his wife separated, their residence was in Fulton county, and after the separation he continued to work in Atlanta, but boarded with his father in De-Kalb county. There was also evidence tending to show that part of the household goods of the plaintiff in error had not been removed from Fulton county. The plaintiff in error did not testify upon the trial of the case. If his domicile at the time of the separation was in Fulton county, and he intended to change it from Fulton to DeKalb, this intention would have to be gathered from the facts and circumstances proved in the case. The plaintiff in his original answer admitted that at the time of the institution of the divorce proceedings he was a resident of Fulton county. By an amendment to his answer, allowed by the court, he struck the paragraph of his answer making this admission, and averred in lieu thereof that he was not at the time the suit was commenced a resident of Fulton county, but was at that time a resident of De-Kalb county. The original answer was introduced in evidence, and the jury had a right to consider the admission made therein in determining the question as to where the plaintiff in error was domiciled when the suit was commenced. *Mims* v. *Jones,* 135 *Ga.* 541 (69 S. E. 824). In view of all the evidence in the case, the question as to whether or not the domicile of the plaintiff in error was in Fulton county at the time of the institution of the suit for divorce against him was one for the jury to determine.

*Judgment reversed. All the Justices concur.*